HORNER v. TOWNSEND.

BILLS AND NOTES—CHECKS—FAILURE OF CONSIDERATION—DIRECTED VERDICT.

In an action on a check given as part of the purchase price of a farm, where plaintiff's testimony failed to make out a case, there being a failure of consideration, a verdict for defendant should have been directed.

Error to Eaton; Smith (Clement), J. Submitted October 17, 1919. (Docket No. 80.) Decided January 5, 1920.

Assumpsit by Charles S. Horner against Lemuel C. Townsend for the amount of a check. Judgment for plaintiff on a directed verdict. Defendant brings error. Reversed.

*Richard Price,* for appellant.

*E. R. Boyles,* for appellee.

MOORE, C. J. November 21, 1916, the plaintiff commenced this suit, filing a declaration on the common counts in assumpsit, and filed a bill of particulars as follows:

"To amount due and owing on a certain check, bearing date January 1, 1911, signed by the defendant and made payable to the order of the plaintiff for the sum of two hundred dollars, with interest thereon from date thereof; also protest fees on said check, amounting to the sum of one dollar and fifty-four cents, and that said check will be given in evidence upon the trial of said cause."

Defendant pleaded the general issue and gave notice that he would show under such plea:

"That the check upon which plaintiff's suit is based is without consideration and void; that it was given as part of the purchase price for real estate which said plaintiff contracted to sell to said defendant; that said plaintiff knew that defendant was buying the property for the purpose of sale, and agreed to execute a deed so that transfer could be made to the prospective purchaser of it, but that said plaintiff failed to perform his agreement and defendant lost the sale of the property, and said plaintiff subsequently sold the property to another. Whereby, defendant lost the profits which he would have made upon the purchase and sale of said property and was greatly damaged and claims judgment in the sum of $1,000 in his favor."

On the trial of the case the check was introduced in evidence. After the testimony was all in the trial court directed a verdict for the full amount of the

check in favor of the plaintiff. The case is brought here by writ of error.

The record shows defendant had negotiations with plaintiff for the purchase of a farm. After they had agreed upon the terms defendant was referred by the plaintiff to Mr. Hendee, an attorney, to draw the papers. A land contract was drawn October 3, 1910, which is in the record in which it is said:

"2. In consideration of the foregoing covenants and agreements on the part of the party of the first part to be done and performed as hereinbefore provided, the party of the second part agrees to purchase and does hereby purchase of said first party the lands and premises above described, and agrees to pay therefor to the said party of the first part, his legal representatives and assigns, the sum of five thousand dollars, in manner following, to wit: Two hundred dollars cash upon the execution and delivery of this duplicate agreement; twenty-three hundred dollars or more on or before the 1st day of January, A. D. 1911, at which time and upon the payment of the said sum of twenty-three hundred dollars by second party, first party agrees to execute and deliver to said second party or to such person or persons as second party may designate, a good and sufficient warranty deed of conveyance of said lands and premises above described, and upon the execution and delivery of said deed, second party agrees to execute and deliver to said first party, or cause to be executed and delivered to said first party, a mortgage back upon said lands and premises for the balance of the purchase money remaining unpaid on said 1st day of January, A. D. 1911." * * *

Instead of paying $200 in cash when the contract was signed it is inferable from the record that the $200-check which is in suit was given.

The defendant sought to show in substance when the contract was drawn it was understood plaintiff was going south soon, and that the attorney stated that the plaintiff would make a deed and would leave it with the attorney for delivery to the defendant on

his performing his part and that later he took Mr. Smith with the money which was required to be paid, and asked for the deed, and that the attorney informed him the deed had not been left with him. This testimony was excluded because Mr. Hendee at the time of the trial was dead, and, unfortunately for the defendant, Mr. Smith was also dead. The defendant gave testimony to the effect that for the purpose of making the payments called for in the contract, he went to the bank in plaintiff's town and to the office of the attorney who drew the contract, and to the place of business of the plaintiff, and was unable to find him, and was told that the plaintiff was in the south. He testified that he was prepared to make the payments and that he was unable to secure the deed. Much of this testimony was stricken out as being within the knowledge of Mr. Hendee. Complaint is made of this ruling of the court.

For the present we may proceed directly to the testimony of the plaintiff. We quote from it as follows:

"I said I had some negotiations with Mr. Townsend relative to the purchase of a farm which resulted in a contract. That contract is here. * * *

"I don't remember seeing Mr. Townsend the day that contract, Exhibit 1, was signed. The business was done through Mr. Hendee entirely. Mr. Townsend and I probably did not meet each other on that day.

"*Q.* What did you give to Mr. Townsend for this check?

"*A.* Gave him a contract.

"*Q.* Gave him a contract. Was that worth $200 alone?

"*A.* I don't know, I am sure.

"*Q.* That contract is dated October 3, 1910, isn't it?

"*A.* I don't remember the date.

"*Q.* That is the date of it. Your check is dated January 1, 1911. How do you explain that?

"*A.* I have not any explanation for it.

"*Q.* You can't explain it. What do you mean by saying you gave Mr. Townsend a contract as a consideration for the $200-check?

"*A.* Well, it bought the farm.

"*Q.* You were to give him a farm?

"*A.* Yes, sir.

"*Q.* That was the consideration for your two hundred dollar-check?

"*A.* Yes, sir. I never gave him the farm. I have since disposed of the farm. It has been sold.

"*Q.* And you have disposed of it for more than what you sold it to Mr. Townsend for?

"*A.* I think so.

"*Q.* You went away somewhere after the contract was signed in October, 1910; where did you go, west or south, or where did you go?

"*A.* I don't remember; I think it was south.

"*Q.* And you agreed before you went away that you would leave the deed for that farm with Mr. Hendee so that if Mr. Townsend had an opportunity to dispose of it the deed would be there for that purpose?

"*A.* I don't remember agreeing to leave it with Mr. Hendee, no.

"*Q.* Whom did you agree to leave it with?

"*A.* It was to be left with the Michigan State Bank. I think it was left there. I am quite sure about it. I think Mr. Hendee knew about it.

"*Q.* Mr. Hendee was looking after your business?

"*A.* Yes, sir. I learned when I got home that Mr. Townsend didn't take the farm.

"*Q.* The reason he didn't take it was because there was no deed made, so that he could give no deed of the farm, and therefore could not make the transaction go through?

"*A.* I think the deed was given.

"*Q.* Why didn't Mr. Hendee know about it?

"*A.* I don't know but what he did know about it.

"*Q.* Mr. Hendee was looking after that business for you?

"*A.* Partly, yes, sir.

"*Q.* If Mr. Hendee didn't know about that deed and couldn't give it to Mr. Townsend you might as well take it as to leave it somewhere else, mightn't you, isn't that true?

"*A*. Why, yes. I never offered the deed to Mr. Townsend.

"*Q*. You didn't leave it with Mr. Hendee who was looking after the business for you?

"*A*. I wouldn't say whether it was left with Mr. Hendee or at the bank."

He later modified his statement about the amount he received on the second sale of the farm.

The recollection of Mr. Horner about the transaction is very hazy. The inference from his testimony, however, is irresistible that instead of a cash payment of $200 being made, the check was given instead; that after the contract was made he went away from home without making provision for the giving and delivery of a deed, and bringing home to the knowledge of the defendant where the deed might be obtained. He never tendered a deed and it is not clearly established from his testimony that one was ever drawn.

We think the testimony of the plaintiff shows a failure of consideration for the check. The long delay in bringing suit may or may not be significant. We think upon plaintiff's own showing he failed to make a case, and that a verdict should have been directed in favor of the defendant.

The judgment is reversed, with costs to the defendant, and a new trial ordered.

STEERE, BROOKE, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.

Justice KUHN took no part in this decision.